IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOIRA L.,[1] | )<br>) |
| Plaintiff, | )<br>) |
| | ) No. 19 C 02687 |
| v. | )<br>) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,[2] | )<br>)<br>) |
| | ) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Moira L.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Dkt. 16, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [Dkt. 24, Def.'s Mot.] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Kilolo Kijakazi has been substituted for her predecessor.

**BACKGROUND**

**I.     Procedural History**

On May 7, 2015, Plaintiff filed a claim for DIB and SSI, alleging disability since June 1, 2014 due to depression, diabetes, kidney disease, and problems with her left eye. [R. 217, 278.] Plaintiff's claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 31, 2017. [R. 41.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 43.] Vocational expert ("VE") Leida Woodham also testified at the initial hearing. [R. 21, 60.] On February 1, 2018, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 18.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

**II.    The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 22.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 1, 2014. [R. 21.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: diabetes mellitus, coronary artery disease s/p coronary artery bypass surgery, primary osteoarthritis of the left knee, and major depression, moderate, recurrent without psychosis. [R. 23.] The ALJ concluded at step three that her impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 24-25.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to

perform light work, except that Plaintiff could only occasionally reach overhead bilaterally; could push/pull 20 pounds occasionally and 10 pounds frequently; could never climb ladders, ropes, or scaffolds; could not work at unprotected heights or around hazardous machinery, or around open blades; could not engage in commercial driving, could only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl; should avoid concentrated exposure to temperature extremes, including humidity; and could only engage in occasional depth perception. [R. 26-27.] The ALJ further limited Plaintiff to simple, routine work with only occasional contact with the general public, co-workers, or supervisors, and noted that plaintiff should not engage in fast-paced production assembly line work or work where the machine is pace setting. [R. 26-27.]. At step four, the ALJ concluded that Plaintiff would be unable to perform her past relevant work as a customer service order clerk. [R. 32-33.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 33-34.]

## DISCUSSION

**I.    Judicial Review**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of

impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.*, at 327.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245

F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

**II.    Analysis**

Plaintiff makes three arguments challenging the ALJ's decision, including: (1) the ALJ did not sufficiently explain her determination of Plaintiff's residual functional capacity; (2) the ALJ improperly assigned little weight to the opinions of her treating physician, Dr. Harold Shrifter;[3] and (3) the ALJ improperly evaluated Plaintiff's subjective symptoms. After reviewing the record and the briefs submitted by the parties, this Court concludes that the ALJ failed to properly consider the required factors in assigning weight to Dr. Shrifter's opinions. Because this failure alone warrants remand, the Court need not reach Plaintiff's additional arguments, though the Court does have concerns regarding the ALJ's evaluation of Plaintiff's residual functional capacity, as explained below.

Plaintiff argues that the ALJ erred in assigning "no controlling or great weight" to the opinions of Dr. Harold Shrifter, and in rejecting the functional limitations identified by Dr. Shrifter. [Dkt. 27 at 7-10.] A treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is "well-supported" by medical findings and "not inconsistent with the other substantial evidence" in the record.[4]    20    C.F.R.

---

[3] Both the parties' briefs and the ALJ's opinion incorrectly refer to Dr. Shrifter, [R. 564], as "Dr. Harold Striker." [R. 31.]

[4] The "treating physician rule" has been rescinded for claims filed after March 27, 2017 "to eliminate the 'controlling weight' instruction." *Kaminski v. Berryhill*, 894 F.3d 870, 874, n.1 (7th Cir. 2018) (comparing 20 C.F.R. § 404.1527(c) (for claims filed before March 27, 2017), with 20 C.F.R. § 404.1527(c) (for claims filed on or after March 27, 2017)).

5

§404.1527(c); *see Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). If a treating physician's opinion is not given controlling weight, the ALJ must determine what weight it merits by considering the following factors: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; and (4) the consistency and supportability of the opinion. 20 C.F.R. § 404.1527(c); *Gerstner*, 879 F.3d at 263. The ALJ "must offer good reasons for discounting the opinion of a treating physician." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (internal quotation omitted).

At the time of Plaintiff's hearing, Dr. Shrifter had been Plaintiff's primary care physician for four years, during which time he saw the Plaintiff approximately every two to four weeks. [R. 410-437, 562.] Dr. Shrifter treated Plaintiff for a variety of ailments both acute and chronic, including her type 1 diabetes, depression, and atherosclerotic heart disease. [R. 410-437.] In an October 2015 physical residual functional capacity assessment, Dr. Shrifter noted Plaintiff's heart disease, diabetes (including neuropathy), hypothyroidism, shoulder, chest, and knee pain, depression, anxiety, and chronic fatigue. [R. 562-563.] Dr. Shrifter indicated that Plaintiff's symptoms would frequently interfere with the attention and concentration needed to perform even simple work tasks, that Plaintiff could only walk half a block without rest or severe pain, and that plaintiff could sit or stand for only ten minutes at a time. [R. 562.] Dr. Shrifter furthered that Plaintiff could sit or stand/walk for less than 2 hours over the course of an 8-hour working day, that Plaintiff would need a job that permitted shifting positions, and that plaintiff would need a 10-20 minute break every hour due to muscular aches, chronic fatigue, high blood sugar, and adverse effects of medication. [R. 563.] Dr. Shrifter also noted that Plaintiff's legs should be elevated 2 feet for 80% of an 8-hour workday due to edema, and that Plaintiff had significant limitations with reaching, handling or fingering due to shoulder pain. [R. 563.] Dr. Shrifter estimated that Plaintiff

6

would be absent from work about four days per month as a result of her impairments or treatment. [R. 563.]

The ALJ assigned "no controlling or great weight" to Dr. Shrifter's opinions. [R. 31]. The ALJ explained that Dr. Shrifter failed to identify objective findings to support his restrictive limitations; that the documented physical examinations and radiologic images revealed no significant abnormalities; and that Plaintiff demonstrated normal gait, normal range of motion in her lower extremities, and normal muscle strength with no evidence of atrophy or wasting. [R 31.] The ALJ further noted that although Dr. Shrifter opined that Plaintiff would have significant limitations in reaching, handling, or fingering, there was no evidence of significant limitations beyond Plaintiff's shoulder pain. [R 31.] Finally, the ALJ rejected Dr. Shrifter's opinion that Plaintiff would need to keep her legs raised because progress notes did not show edema as a consistent symptom. [R. 31.].

The ALJ failed to apply the correct legal framework in assessing Dr. Shrifter's opinions, however, and also failed to build a logical bridge between the record and her conclusions. Even if the ALJ was not obligated to assign Dr. Shrifter's opinions controlling weight, the ALJ was required to consider the factors identified in 20 C.F.R. §404.1527(c) in assessing what weight to give to Dr. Shrifter's opinions. *Gerstner*, 879 F.3d at 263. The ALJ failed to do so, as follows.

First, the ALJ never identified, let alone discussed, "the length, nature, and extent of" Plaintiff's treatment relationship with Dr. Shrifter; the "frequency" with which Dr. Shrifter treated Plaintiff; or Dr. Shrifter's specialty (internal medicine). *See* 20 C.F.R. § 404.1527(c) (requiring consideration of these factors). Indeed, the ALJ never even expressly noted that Dr. Shrifter *was a treating physician*, let alone Plaintiff's primary care physician.

Moreover, several of the factors the ALJ failed to consider weigh in favor of affording substantial weight to Dr. Shrifter's opinions: plaintiff was a regular and very frequent patient of Dr. Shrifter's since 2013, with appointments monthly and sometimes even more frequently. [R. 410-437.] Dr. Shrifter's status as Plaintiff's regular primary care physician whom she saw monthly for years suggests that he may have had a well-founded longitudinal view of Plaintiff's symptoms. It was error for the ALJ to fail to consider the length, nature, frequency, and extent of Plaintiff's relationship with Dr. Shrifter. *See Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (noting that these factors "may have caused the ALJ to accord greater weight to" a treating physician's opinion); *Gerstner*, 879 F.3d at 263.

Additionally, the ALJ failed to build an accurate and logical bridge between the record and her conclusions regarding the factors she did consider, *i.e.*, the consistency and supportability of Dr. Shrifter's opinions. While some of the ALJ's considerations in evaluating Dr. Shrifter's opinions were proper—such as Dr. Shrifter's failure to identify specific objective findings supporting the restrictions he identified, and records indicating plaintiff had normal gait, range of motion, and muscle strength—a number of the ALJ's considerations are either unsupported by the record or inconsistent with the ALJ's other findings. For example, the ALJ appeared to discount Dr. Shrifter's opinions because Dr. Shrifter checked off on his physical residual functional capacity questionnaire that Plaintiff had significant problems with "reaching, handling, or fingering" due to shoulder pain—even though the ALJ credited Plaintiff's complaints with respect to shoulder pain, and the ALJ's RFC accordingly limited the extent to which Plaintiff could reach overhead. [R. 31.] Dr. Shrifter did not opine that Plaintiff had issues with all three of reaching, handling, *and* fingering; he opined that Plaintiff had significant limitations with respect to at least one of those activities. [R. 563.] Dr. Shrifter's opinion on "reaching, handling, or fingering" is thus

8

consistent with the ALJ's assessment of Plaintiff's abilities, which found that Plaintiff had significant reaching limitations that were supported by the record. It was error for the ALJ to discount Dr. Shrifter's opinion in part due to his views on "reaching, handling, or fingering" when the ALJ's conclusion regarding "reaching, handling, or fingering" cohered with Dr. Shrifter's conclusion.

The ALJ also discounted Dr. Shrifter's opinions with respect to Plaintiff's need to raise her legs because progress notes did not show edema as a consistent symptom. [R. 31]. This reason was both factually incorrect and insufficiently explained, however. The record is replete with references to Plaintiff's edema; for instance, an October 2015 progress note explains that Plaintiff had swelling in her ankles for the past four weeks and "2+ edema." [5] [R. 552.] Dr. Shrifter and other physicians also noted Plaintiff's edema in numerous additional progress notes over several years. *See, e.g.*, [R. 434, 551, 555, 557, 1121, 1169, 1203]; *see also Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (ALJ improperly evaluated treating physician's opinion where ALJ incorrectly indicated that the record contained no evidence of particular symptoms). Moreover, even if references to Plaintiff's edema were "inconsistent" as the ALJ indicated, the ALJ did not explain why the fact that Plaintiff may have only experienced edema intermittently was inconsistent with Dr. Shrifter's opinion with respect to Plaintiff's need to raise her legs; it appears the ALJ relied on her own unarticulated judgment on what was medically needed. *See Hurlbut v. Astrue*, No. 11 C 6099, 2013 WL 2285802, at *6 (N.D. Ill. May 23, 2013) (remanding where ALJ relied "on

---

[5] Defendant argues that the record reflects Plaintiff suffered only from the lowest grade edema (grade 1), but (1) this is incorrect, as multiple records indicate Plaintiff suffered from grade "2+ edema," [R. 434, 552.]; and (2) in any case, the ALJ never discussed the severity of Plaintiff's edema. *See Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("Under the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace.").

9

conjecture and her own assessment of the medical evidence to conclude that the treating physicians were unreliable.").

In short, the ALJ failed to consider several of the required factors in assessing Dr. Shrifter's opinions as a treating physician, and the ALJ's analysis of the factors she did consider included multiple inaccuracies and unsupported statements.

Although the ALJ's treatment of Dr. Shrifter's opinions itself warrants reversal,[6] the Court notes its concern with another element of the ALJ's opinion, for consideration on remand. In multiple instances, the ALJ simply listed pieces of the medical record and, with no analysis or effort to incorporate medical opinions interpreting the evidence,[7] came to a conclusion regarding the Plaintiff's limitations. "Merely reciting the medical evidence in close proximity to conclusions does not create an accurate and logical connection between evidence and conclusions." *Hinton v. Colvin*, No. 10 C 2828, 2013 WL 2590711, at *7 (N.D. Ill. June 11, 2013). Yet that is precisely what the ALJ did in her discussion of several important medical issues. For example, in assessing the Plaintiff's heart condition, the ALJ recited records from 2016, and then concluded that Plaintiff "should avoid concentrated exposure to temperature extremes, including humidity," without an explanation of why the record evidence cited yielded that limitation and that limitation alone. [R. 28.] Likewise, with respect to Plaintiff's knee pain, the ALJ listed a series of examination results and then declared, without any further explanation, that the examinations yielded a limitation "to light work except that [Plaintiff] should never climb ladders, ropes, or scaffolds, and could only

---

[6] Defendant argues that any error with respect to crafting the RFC was harmless "[a]s long as the court concludes that the ALJ reasonably discounted Dr. Striker's [sic] and Ms. Friedenburg's opinions." [Def's Mot. at 4.] Defendant does not argue that an error in weighing Dr. Shrifter's opinions is harmless, which is the ground for remand in this case.

[7] It is also worth noting that although multiple agency medical consultants offered opinions in this case [R. 71, 91-123], the ALJ cited to only one such opinion, and even then, only discussed the portion that addressed Plaintiff's vision. [R. 31.]

occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl." [R. 29.] The Court is again left wondering how the ALJ arrived at these specific limitations. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("[T]he ALJ did not explain how he arrived at these conclusions [regarding specific limitations]; this omission in itself is sufficient to warrant reversal of the ALJ's decision.").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [16] is granted, and the Commissioner's motion for summary judgment [24] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 3/22/2022

BETH W. JANTZ
United States Magistrate Judge